IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF GEORGIA

ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | : CRIMINAL INDICTMENT |
| v. | : |
| | : NO. 1:06-CR-382-JTC-(LTW) |
| JARED ROBERT WHEAT | : |
| STEPHEN D. SMITH | : |
| TOMASZ HOLDA | : |
| SERGIO OLIVEIRA | : |
| DAVID BRADY | : |
| DAVID JOHNSON | : |
| DAVID WATKINS | : |
| BRAD WATKINS | : |
| STEVEN BLINDER | : |
| MICHELE YOUNG | : |
| GUILLERMO PECH | : |
| HI-TECH PHARMACEUTICALS, INC. | : |
| d/b/a Planet Pharmacy, Target | : |
| Data, Target Data Processing, | : |
| Pegasus Resources, Global | : |
| Pharmacy and Generic Limited | : |

GOVERNMENT'S RESPONSE
TO DEFENDANT JARED WHEAT'S NOTICE OF FILING
OF SUPPLEMENTAL EVIDENCE IN SUPPORT OF HIS
<u>MOTION TO SUPPRESS EVIDENCE SEIZED IN BELIZE</u>

COMES NOW the United States of America, by its counsel, David E. Nahmias, United States Attorney for the Northern District of Georgia, and Aaron M. Danzig, Randy S. Chartash, and J. Russell Phillips, Assistant United States Attorneys, and responds to Defendant Jared Wheat's "Notice of Filing of Supplemental Evidence in

Support of Defendant Jared R. Wheat's Motion to Suppress Evidence Seized in Belize",[1] (Doc 466), as follows:

> I. <u>Defendant Wheat's Supplemental Response Was Not Filed With Consent Of the Court.</u>

On April 20, 2007, Defendant Wheat filed a "Motion to Strike the Government's Sur-Reply To His Motion to Suppress Evidence Seized in Belize, or, in the Alternative, Response Thereto," (Doc 404), after the Government filed a 3-page sur-reply exposing the fatal flaw in Defendant's Motion – that documents submitted by Defendant to the Court reveal that the search of the defendants' Belizean facility was based on information provided by the British government. It is indeed ironic that Defendant Wheat would now submit his own sur-sur-reply (conveniently styled as a Notice of Filing of Supplemental Evidence) in light of Defendant's earlier Motion to Strike, in which Defendant Wheat wrote:

> Without any explanation, and without first seeking leave of this Court, the Government filed its Sur-Reply on April 10, 2007, well over a month after Defendant Wheat filed his Belize Motion to Suppress Reply and Supplemental Brief (Doc 340) on February 20, 2007. As a procedural matter, this action was unauthorized, and thus, this Court should strike the Government Sur-Reply.
>
> This District does nor [*sic*] permit parties to file surreplies as a matter of

---

[1] Defendants Smith and Oliveira have moved to adopt Defendant Wheat's Notice of Filing. <u>See</u> Docs 470 and 471, respectively. Accordingly, the Government requests that this response apply to their motions to adopt as well.

right, as the Government has purported to do here. As Judge Duffey recently wrote in *Fedrick v. Mercedes-Benz USA, LLC*, 366 F.Supp.2d 1190, 1197 (N.D.Ga. 2005): "Neither the Federal Rules of Civil Procedure nor this Court's Local Rules authorize the filing of surreplies. Although the Court may in its discretion permit the filing of a surreply, *this discretion should be exercised in favor of allowing a surreply only where a valid reason for such additional briefing exists*, such as where the movant raises new arguments in its reply brief." (emphasis added; citation omitted). It is thus abundantly clear under *Fedrick*, as well as the other Northern District of Georgia cases upon which it relies, that because neither the local rules nor the Federal Rules of Civil Procedure permit the filing of a surreply as a matter of right, the Government here first had to seek leave of court to file the Government Sur-Reply. It is simply beyond dispute that the Government did not do so.

(Doc 404-5-6).

> II. <u>The Affidavits Submitted by Defendant Wheat Contain Nothing More Than Rumor, Innuendo, and Gross Speculation; Thus, They Should Not Be Given Any Weight By the Court.</u>

Even were the Court to consider Defendant's supplemental filing, the affidavits filed should not be given any weight as they contain nothing more than rumor, speculation, and innuendo. Collectively, they comprise a last-ditch effort to manufacture a Fourth Amendment issue out of the execution of a Belizean search warrant when none exists. In fact, two of the four affidavits presented are from counsel to Defendant Wheat (Glenn Godfrey[2] and Dickie Bradley). If these

---

[2] The Government produced in discovery documents detailing payments, including specifically attorneys' fees, made by Wheat/Target Data to Glenn Godfrey & Company in 2004 and 2005. <u>See, e.g.</u>, Bates 110434.

-3-

individuals had specific, real information of substance to present, Defendant Wheat would have presented them when he filed his motion to suppress on December 22, 2006. Indeed, Mr. Godfrey submitted a facsimile in support of Defendant Wheat for Wheat's detention appeal on October 30, 2006. See Doc 170-70. The fact that Defendant Wheat is only presenting these affidavits now is further acknowledgement of the weakness of his motion.

As explained in more detail below, the affidavits presented by Defendant Wheat contain little more than conclusory allegations and gross, unsubstantiated speculation. What is left after separating the wheat from the chaff, however, actually supports the Government's position that the Fourth Amendment does not apply to the Belizean police's search of a business in Belize and that Defendant Wheat's motion should be denied without an evidentiary hearing.

    1.    <u>Glenn Godfrey's Affidavit</u>

In his affidavit, Glenn Godfrey claims that he "contacted by telephone a high ranking official of the Ministry of Home Affairs," who told him that the search of the Target Data premises "was principally a United States operation." (Doc 466, Godfrey Aff., ¶¶ 6-8). Conveniently, Godfrey claims that he is not comfortable disclosing the identity of the claimed "high ranking official" due to some amorphous "ramifications from that identification in my country." (Doc 466, Godfrey Aff., n.1). It is

remarkable that a high ranking government official whose department oversees the Belize National Police would be afraid of the "ramifications" of providing truthful information about cooperation between American and Belizean law enforcement in the universally laudable goal of fighting illegal drug activity.

Additionally, Mr. Godfrey neglects to mention that he is not some disinterested third party but instead was Defendant Wheat's lawyer. Instead, Mr. Godfrey suggests he was merely Target Data's landlord.[3] In fact, at the September 20, 2006 detention hearing before Magistrate Judge Walker, counsel for Defendant Wheat informed the Court that Defendant Wheat's decisions to flee Belize in July 2004 and to transfer $1.7 million dollars from Belize to Panama in September 2004 was upon advice of his attorney, Glenn Godfrey. See Doc ____-58-60 (9/20/06 Detention Hearing Transcript); see also Doc 170-70 (10/30/06 Bond Appeal Hearing).

2. Dr. Elson Kaseke's Affidavit

The affidavit of Dr. Elson Kaseke is likewise flawed. Dr. Kaseke was Solicitor

---

[3] It is perhaps more than coincidental that Mr. Godfrey's company (Data Pro), which ran the Export Processing Zone where Target Data was located, contacted Belize police during the execution of one of the search warrants claiming that Target Data owed Data Pro $809.80 for an electric bill and then shut off the power to Target Data causing the search to be suspended. (See Defendant's Motion to Suppress, Doc 220, Ex. 2 at ¶ 22). This information was contained in Assistant Superintendent of Police Myvett's affidavit, submitted by the Defendant in support of his motion to suppress. It is not new evidence presented by the Government.

General of Belize and "represented the Government of Belize in civil claims in all courts in and for Belize." Dr. Kaseke claims that the information leading to the search of Defendant Wheat's Belizean drug manufacturing facility by the Belize Police Department was provided by United States DEA agents. However, this claim is directly contradicted by the affidavits of the Belize police who actually applied for, obtained, and executed the search warrants. See, e.g., Defendant Wheat's Motion to Suppress Evidence from Belize, Doc 220, Exh 2 (Affidavit of Joseph Myvett). Assistant Superintendent of Police Myvett clearly and repeatedly states in his affidavit that information used for the Belize government to apply for the search of the defendants' Belize facility was provided by the United Kingdom and it related to Class C drugs Alprazolam and Phentermine that were illegally shipped from the defendants' Belize facility to the United Kingdom. See Doc 220, Exh 2. Moreover, the affidavit of Joseph Myvett was prepared for a civil case where Dr. Kaseke represented the Belize Police Department in litigation regarding Target Data's request for return of the drugs seized during the Belize Police's search. See Doc 220, Exh. 7 (Transcript of hearing in Belize civil case where Dr. Kaseke represented the Belize Police Department in his capacity as Solicitor General). Certainly Dr. Kaseke was aware of Myvett's affidavit yet he does not address or even reference the clear contradiction between his affidavit and Myvett's affidavit.

When viewed closely, however, Dr. Kaseke's affidavit in fact detracts from Defendant Wheat's claim that the evidence seized by the Belize police during the Belize police's search of a facility in Belize should be suppressed because the Belize officials were acting as agents of the American law enforcement. Dr. Kaseke makes abundantly clear in his affidavit that the Belize government was prosecuting a criminal case in Belize involving the drugs and other items seized at Defendant Wheat's Belize manufacturing facility. Dr. Kaseke states that "[a]fter the search, the materials and items that were found in the Target Data facility was provided by members of the Belize Police Department to agents of the DEA and the [FDA]." (Doc 466, Kaseke Aff., ¶ 7). By his own admission, the Belize police executed the search and <u>then</u> provided materials to the United States law enforcement.

Dr. Kaseke goes even further in showing that the Belize police were not agents of the American government. He states that in his capacity as Solicitor General of Belize and in conjunction with the advice of a Director of Public Prosecutions (Mr. Kirk Anderson), "we <u>allowed</u> DEA and FDA agents to 'image' or copy the computers which were found at the Target Data Facility. No other agency of the Government of Belize can 'image' computers." (<u>Id.</u> (emphasis added)). He further states, "[w]e also cooperated in providing samples of the pills that were found ... and those drugs were tested by DEA in the United States." These admissions directly contradict the basis

-7-

of Defendant Wheat's motion to suppress. They show that the Belize police were conducting their own investigation and prosecution and chose to allow American law enforcement access to items that were seized in part to secure the assistance of American law enforcement to image the computers and test the drugs. If the Belize government was conducting its own investigation and maintaining its own prosecution, then it was not acting as the agent of the American government such that the Fourth Amendment should apply.

### 3.     Dickie Bradley's Affidavit

Jared Wheat's Belizean defense attorney, Dickie Bradley, swears in his affidavit that "it has been a well known and accepted fact in Belize that the DEA and the United States Food and Drug Administration (FDA) were the driving force behind the search and prosecution of Target Data and Jared Wheat in Belize." (Doc 466, Bradley Aff, ¶ 3). Such bald accusations by the Defendant's attorney should not be considered as evidence by this Court. Moreover, Mr. Bradley then claims that the prosecutor, Mr. Kirk Anderson, told Mr. Bradley that the DEA "fueled the [Belizean] investigation." (Doc 466, Bradley Aff., ¶ 7). However, Mr. Anderson refused to provide an affidavit to that effect. Additionally, Mr. Bradley's affidavit does not address Dr. Kaseke's affidavit claiming that Dr. Kaseke and Mr. Anderson together advised the Belizean government to "allow" DEA and FDA to image the computers and test the drugs

seized by the Belizean police. (Doc 466, Kaseke Aff., ¶ 7). Had the United States government truly "initiated," "fueled," and was the "driving force" behind the investigation in Belize, then there would have been no need for the Solicitor General and a Director of Public Prosecutions to explicitly discuss and give consent for the Belize police to allow the American authorities to image computers and test drugs.

Finally, Mr. Bradley claims that the Assistant Commissioner of Police "confirmed to [Bradley] the known information that the DEA were involved in the investigation and the search of Jared Wheat[*sic*] business at Target Data." (Doc 466, Bradley Aff., ¶ 10). Again, Wheat's Belizean defense attorney's claim about a third party's confirmation of "known" information should be discounted by the Court.

4.  Lionel Castillo's Affidavit

Mr. Castillo works for an "independent Parliamentary Office" and is not on the Belizean police force. Notwithstanding that, he claims that he is familiar with Jared Wheat and Wheat's business (Target Data). (Doc 466, Castillo Aff., ¶ 2). Mr. Castillo then claims, in the same rumor-mill vein as Mr. Bradley, that "it became a known and accepted fact in Belize that the DEA and the United States Food and Drug Administration (FDA) were the driving force behind the search and prosecution of Target Data and Jared Wheat personally in Belize." (Doc 466, Castillo Aff., ¶ 3). Mr. Castillo also claims that he spoke with some Belizean police who were involved in the

search and who claim that "the DEA played a central role in the initiation of the search and the prosecution of Mr. Wheat ... in Belize." (Doc 466, Castillo Aff., ¶ 4). Of course, as noted above, this contradicts the affidavit provided by one of the officers who actually applied for and obtained the search warrant. Assistant Superintendent Myvett instead explains that the investigation was initiated from information supplied by British law enforcement. Accordingly, Mr. Castillo's affidavit should, as the others submitted by Defendant Wheat, be given no weight or consideration.

\*   \*   \*   \*

Contrary to Defendant's claim, the affidavits he submitted do not provide a further basis upon which the Court should grant an evidentiary hearing on Defendant's motion to suppress; instead, these affidavits have been exposed as consisting of flawed information, rumors, and internal contradictions. They do not support Defendant's motion, and Defendant's motion should be denied without an evidentiary hearing.

Dated: August 10, 2007.

          Respectfully submitted,

          DAVID E. NAHMIAS
          UNITED STATES ATTORNEY

           */s/ Aaron M. Danzig*

          AARON M. DANZIG
          ASSISTANT U.S. ATTORNEY
          Georgia Bar No. 205151

           */s/ Randy S. Chartash*

          RANDY S. CHARTASH
          ASSISTANT U.S. ATTORNEY
          Georgia Bar No. 121760

           */s/ J. Russell Phillips*

          J. RUSSELL PHILLIPS
          ASSISTANT U.S. ATTORNEY
          Georgia Bar No. 576335

          600 Richard B. Russell Building
          75 Spring Street, S.W.
          Atlanta, GA 30303
          (404) 581-6000
          (404) 581-6181 (facsimile)

CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 5.1B

This is to certify that the foregoing document was formatted in accordance with Local Rule 5.1B in Times New Roman font, 14 point type.

CERTIFICATE OF SERVICE

This is to certify that I have this day served upon counsel of record in this case a copy of the foregoing document via the Electronic Case Filing system of the United States District Court for the Northern District of Georgia.

This 10th day of August, 2007.

      /s/ Aaron M. Danzig
AARON M. DANZIG
ASSISTANT U.S. ATTORNEY